

ENTERED
CLERK, U.S. DISTRICT COURT

OCT 2 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY



FILED
CLERK, U.S. DISTRICT COURT

OCT 2 6 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

**THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).**

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEARLMAN dba CHRISTOPHER MICHAEL PHOTOGRAPHY, <br><br>                 Plaintiff, <br><br>         v. <br><br> COURTROOM TELEVISION NETWORK LLC, a New York limited liability company; and DOES 1 through 5, inclusive, <br><br>               Defendants. | CV 06-3685 SVW (MANx) <br><br> ORDER DENYING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING PLAINTIFF'S RULE 56(F) MOTION [15, 23] |

## I.    INTRODUCTION

Plaintiff Michael Pearlman ("Plaintiff" or "Pearlman") has filed a single-claim complaint for copyright infringement against defendant Courtroom Television Network LLC ("Defendant" or "CTN").  According to his first amended complaint ("FAC"), Plaintiff was hired as a wedding photographer by Kristin Rossum and Gregg de Villers.  Rossum and de Villers signed an agreement acknowledging Pearlman's copyright ownership of the wedding photographs, including the negatives.

1     Plaintiff filed a copyright registration form regarding these

2 pictures, which bears the number VAU-531-082.  The couple married on

3 June 5, 1999.

4     Within two years of their marriage, de Villers was found dead in

5 the apartment he shared with Rossum in San Diego, California.

6 Ultimately, Rossum was arrested and convicted of murdering her

7 husband.

8     In March 2004, CTN's representatives approached Plaintiff about

9 using a specific wedding photograph in a television program that would

10 detail the murder.  Plaintiff, who owns the copyright to this picture,

11 refused this request.  However, CTN apparently proceeded to obtain a

12 photograph of the de Villers' bedroom, which contained within it a

13 depiction of the wedding photograph in question (i.e., a "picture

14 within a picture").  Defendant then cropped and zoomed in on the

15 wedding photograph in order to use it for its television program.

16     The television program, "Pretty Poison," aired in July 2004.[1]

17 Pretty Poison is approximately forty-four (44) minutes in length,

18 excluding time for commercials.  Plaintiff's wedding photograph

19 appears on two different occasions.  In the program's first minute,

20 the photograph encompasses the entire screen for a period of one to

21 two seconds.  A few minutes later, the wedding photograph again

22 appears over the entire viewing area for about seven seconds, while

23 the audience is able to hear voiceovers.

24

25

---

26     [1] Defendant provided this Court with a copy of "Pretty
Poison" in its Request for Judicial Notice, attached as Exhibit

27 B.  Plaintiff does not dispute the program's authenticity.  This
Court has reviewed Pretty Poison in its entirety.

28

1     Defendant filed a motion to dismiss Plaintiff's FAC on the basis

2 of its affirmative defenses of "de minimis" use, fair use, and the

3 First Amendment.  At a hearing on September 25, 2006, this Court

4 converted CTN's 12(b)(6) motion to dismiss to a motion for summary

5 judgment.  Plaintiff has filed a Rule 56(f) motion seeking a

6 continuance to permit discovery.  Because this case was recently

7 filed, the parties have apparently not engaged in any discovery to

8 date.

9     For the reasons discussed below, this Court DENIES Defendant's

10 converted motion for summary and GRANTS Plaintiff's motion for a Rule

11 56(f) continuance.

12

13 **II.  DISCUSSION**

14     Plaintiff's Rule 56(f) motion does not request any discovery

15 related to Defendant's de minimis and First Amendment defenses, but

16 only as to the fair use defense.  As a result, this Court must

17 determine whether these other defenses will dispose of the litigation

18 without any reference to fair use.  If so, it would be unnecessary to

19 examine Plaintiff's requests for discovery under Rule 56(f).

20     A.   <u>Legal Standard Governing a Motion for Summary Judgment</u>

21     Rule 56(c) requires the Court to grant summary judgment for the

22 moving party when the evidence, viewed in the light most favorable to

23 the nonmoving party, shows that there is no genuine issue as to any

24 material fact, and that the moving party is entitled to judgment as a

25 matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Tarin v. County of Los</u>

26 <u>Angeles</u>, 123 F.3d 1259, 1263 (9th Cir. 1997).

27

28

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See id. at 323-34; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1968).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Only genuine disputes - where the evidence is such that a reasonable jury could return a verdict for the nonmoving party - over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248; see also Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (holding the nonmoving party must provide specific evidence from which a reasonable jury could return a verdict in its favor).

B.   De Minimis Use

"For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004).  However, "a taking is considered de minimis only if it is so meager and fragmentary that the average audience would not recognize the appropriation."  Fisher v. Dees, 794 F.2d 432, 434 n.2 (9th Cir.

4

1  1986).  Additionally, "where the unauthorized use of a copyrighted

2  work is de minimis, no cause of action will lie for copyright

3  infringement, and determination of a fair use claim is unnecessary."

4  Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998).

5  De minimis use has been categorized as an affirmative defense to

6  copyright infringement.  See Compaq Computer Corp. v. Ergonome Inc.,

7  387 F.3d 403, 407 (5th Cir. 2004).

8      After reviewing "Pretty Poison," this Court notes that

9  Defendant's reproduction of Plaintiff's photograph is not of the

10  highest quality.  However, one could reasonably infer that the picture

11  was originally a professional image created specially for the

12  Rossum/de Villers wedding.  This case is unlike Sandoval, where the

13  misappropriated images were "not displayed with sufficient detail for

14  the average lay observer to identify even the subject matter of the

15  photographs."  Id. at 218.  In contrast, the wedding photograph's

16  subject matter is quite easily discernible in Pretty Poison.

17      The Second Circuit has also explained that "[a] helpful analogy

18  in determining whether the purpose and duration of the segments should

19  be regarded as de minimis is the regulation issued by the Librarian of

20  Congress providing for royalties to be paid by public broadcasting

21  entities for the use of published pictorial and visual works."

22  Ringgold v. Black Enter. Television, Inc., 126 F.3d 70, 77 (2d Cir.

23  1997).  The Librarian has determined that full screen displays of

24  images for three seconds or more ("featured") should be afforded a

25  higher royalty rate than those displays not meeting this definition

26  ("background").  Id.  As a result, this three second threshold is a

27  significant factor for this Court to consider.  Id.; see also Brown v.

28

5

1  McCormick, 23 F. Supp. 2d 594, 609 (D. Md. 1998) (citing Ringgold's de

2  minimis use framework).

3      In this case, Plaintiff's photograph was used as a full screen

4  display at two points – the first time for one to two seconds, and the

5  second for approximately seven seconds.  The latter instance, by

6  itself, is more than two times the threshold set by the Librarian. [2]

7  While the picture quality is not perfect, a jury could find that it is

8  "clearly visible, albeit in less than perfect focus."  Compare

9  Ringgold, 126 F.3d at 77, with Gordon v. Nextel Comm. & Mullen Adv.,

10  Inc., 345 F.3d 922, 924-25 (6th Cir. 2003).

11      Considering the length of time that Defendant used Plaintiff's

12  image, and its visibility in the film, a jury could determinate that

13  an "average audience" would recognize the misappropriation.   Summary

14  judgment, therefore, cannot be granted on this defense.

15      C.   The First Amendment

16      Defendant implies that the First Amendment provides a

17  supplemental basis for dismissing Plaintiff's copyright infringement

18  claim, in addition to the fair use defense.   This argument fails.

19  Plaintiff appropriately cites to Elvis Presley Enters. v. Passport

20  Video, 349 F.3d 622 (9th Cir. 2003).   In Passport Video, the defendant

21  similarly tried to invoke both the fair use doctrine, as well as a

22  "supplemental" First Amendment defense.   The Ninth Circuit's holding

23  was definitive: "We need not jump into this briar patch. We have held

24  that First Amendment concerns in copyright cases are subsumed within

25  the fair use inquiry. In other words, if the use of the alleged

26

27  _____

28  [2] This Court does not hold that the Librarian's royalty designation is dispositive.

6

1  infringer is not fair use, there are no First Amendment prohibitions."

2  Id. at 626 (emphasis added).

3      Thus, the Ninth Circuit has made clear that all First Amendment

4  concerns in copyright infringement cases are limited solely to the

5  fair use defense.  To the extent the First Amendment is in play, it

6  will be analyzed as a potential fair use.  Summary judgment cannot be

7  granted on the basis of the "First Amendment defense."

8      D.   Fair Use

9      The fair use doctrine is codified at 17 U.S.C. § 107.  It

10  provides that "the fair use of copyrighted work . . . is not an

11  infringement of a copyright."  Id.  In determining whether a putative

12  infringer's actions qualify as a fair use, § 107 explicitly directs

13  this Court to consider four non-exclusive factors.  These factors are:

14      (1) the purpose and character of the use, including whether such

15      use is of a commercial nature or is for nonprofit educational

16      purposes;

17      (2) the nature of the copyrighted work;

18      (3) the amount and substantiality of the portion used in relation

19      to the copyrighted work as a whole; and

20      (4) the effect of the use upon the potential market for or value

21      of the copyrighted work.

22  Id.  This analysis "is not to be simplified with bright-line rules,

23  for the statute, like the doctrine it recognizes, calls for case-by-

24  case analysis."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577

25  (1994).  The issue of fair use is "a mixed question of law and fact."

26  Wall Data Inc. v. Los Angeles County Sheriff's Dep't, 447 F.3d 769,

27  777 (9th Cir. 2006).  Additionally, "[b]ecause fair use is an

28  affirmative defense, [d]efendants bear the burden of proof on all of

1  its factors." <u>Columbia Pics. Indus., Inc. v. Miramax Films Corp.</u>, 11

2  F. Supp. 2d 1179, 1187 (C.D. Cal. 1998.) (emphasis added).

3           1.   <u>Why the Court Converted Defendant's Motion to Dismiss</u>

4                 <u>to a Motion for Summary Judgment</u>

5      A fair use defense may sometimes be resolved at summary judgment.

6  <u>See, e.g.</u>, <u>Newport-Mesa Unified Sch. Dist. v. Dep't of Educ.</u>, 371 F.

7  Supp. 2d 1170, 1176 (C.D. Cal. 2005) (citing <u>Worldwide Church of God</u>

8  <u>v. Phila. Church of God, Inc.</u>, 227 F.3d 1110, 1115 (9th Cir. 2000)).

9  However, Defendant earlier asked this Court to go one step further and

10 adjudicate this defense at the motion to dismiss phase.

11     In <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 429 F. Supp. 2d 1190

12 (C.D. Cal. 2005), this Court found no "reason to treat a fair use

13 claim any differently than any other claim for the purposes of a

14 motion to dismiss." <u>Id.</u> at 1196.[3]  However, this decision should be

15 construed narrowly because of the admittedly unusual context in which

16 the claim arose.  As then cautioned, "[t]he Court notes the unique

17 procedural framework of this case. The fair use doctrine, normally

18 used as an affirmative defense, is being used as a ground for the

19 Court to grant declaratory relief.  In other words, the fair use

20 doctrine is being used as a sword rather than a shield." <u>Id.</u>

21     In effect, the burden of proof was reversed from its usual

22 position in <u>Leadsinger</u>.  By seeking declaratory relief based on the

23 fair use doctrine, the <u>plaintiff</u> was required to allege facts to

24 support its claim.  In the instant litigation, as earlier noted, the

25         [3] Defendant claims that <u>Morgenstein v. ABC Inc.</u>, 1998 U.S.

26 Dist. LEXIS 14994 (N.D. Cal. Sept. 11, 1998), is a case in which
   the court granted a defendant's motion to dismiss based on fair

27 use.  (Def. Motion at 3 n.6.)  This Court's review of the very
   brief opinion does not indicate any rationale for dismissing the

28 plaintiff's complaint.

burden of proof is on Defendant.  Several district courts have
expressed a healthy dose of skepticism about granting a defendant's
motion to dismiss when fair use is invoked as an affirmative defense.
One court has even recently held that, per se, fair use "is
inappropriate for determination in a 12(b)(6) motion, since [it] is an
affirmative defense to an infringement claim."  Four Navy Seals v.
Associated Press, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005).  Other
courts have also stated that a defendant is highly unlikely to succeed
on a motion to dismiss due to the fair use doctrine's complicated
nature.  See Video Pipeline, Inc. v. Buena Vista Home Enter., Inc.,
210 F. Supp. 2d 552, 569 (D.N.J. 2002) ("[T]he applicability of the
fair use defense in the context of a motion to dismiss is
questionable."); Cortland Line Co., Inc. v. Orvis Co., 1997 WL 808608,
at *4 (N.D.N.Y. Jan. 5 1997) ("Although affirmative defenses may be
raised in a motion to dismiss, defenses such as the fair use doctrine
involve a more detailed analysis of the facts at issue and are best
resolved by summary judgment motions or adjudication at trial."); Int-
Elect Eng'q v. Clinton Harley Corp., 1993 WL 557639, at *2 (N.D. Cal.
June 24, 1993) (same).

        Therefore, this Court determined at the September 25, 2006
hearing that it was appropriate to convert Defendant's motion to
dismiss to a motion for summary judgment.

                2.    Defendant's Motion for Summary Judgment Must be Denied
        Defendant has not cited a single case in which summary judgment
has ever been granted on the basis of a fair use defense before
discovery has commenced.  Defendant argues that this Court may grant
summary judgment by simply reviewing "Pretty Poison" itself.  However,
summary judgment cannot be granted particularly because of the fourth

1  fair use factor - "the effect of the use upon the potential market for

2  or value of the copyrighted work." 17 U.S.C. § 107(4).

3      Defendant avoids the central issue in this respect by pouncing

4  upon Plaintiff's bad argument.  Plaintiff has argued that Defendant is

5  "presumed" to have adversely affected Plaintiff's market for its

6  copyrighted work based upon the commercial nature of Defendant's

7  television program.  Defendant correctly points out that the Supreme

8  Court has rejected this argument.  As the Court stated, "[n]o

9  'presumption' or inference of market harm . . . is applicable to a

10 case [unless it] involv[es] something beyond mere duplication for

11 commercial purposes."  Campbell, 510 U.S. at 591.

12     However, Defendant then improperly argues that Plaintiff has the

13 burden of establishing market harm.  This is clearly forbidden by the

14 Supreme Court.  The Campbell Court held that "[s]ince fair use is an

15 affirmative defense, its proponent would have difficulty carrying the

16 burden of demonstrating fair use without favorable evidence about

17 relevant markets."  Id. at 590 (emphasis added).  The same Court also

18 emphasized that where a defendant merely asserts that a plaintiff has

19 not suffered any cognizable market harm, it would consequently be

20 "impossible to deal with the fourth factor except by recognizing that

21 a silent record on an important factor bearing on fair use disentitled

22 the proponent of the defense."  Id. at 590, 594 (emphasis added); see

23 also Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d

24 1394, 1403 (9th Cir. 1997) (same).

25     In this case, Defendant has submitted no evidence regarding

26 market harm.  This is unsurprising since discovery has not yet begun.

27 However, Defendant cannot succeed by attempting to shift its

28 evidentiary burden to Plaintiff.

1  There is currently a "silent record" as to Plaintiff's purported

2  market harm.  Consequently, Defendant's motion for summary judgment

3  must be denied.

4      E.   Plaintiff's Rule 56(f) Motion

5      Federal Rule of Civil Procedure 56(f) allows the Court to refuse

6  an application for summary judgment or order a continuance if the

7  party opposing the motion cannot present "facts essential to justify

8  the party's position."[4]  "To prevail under this Rule, parties opposing

9  a motion for summary judgment must make '(a) a timely application

10 which (b) specifically identifies (c) relevant information, (d) where

11 there is some basis for believing that the information sought actually

12 exists.'" Employers Teamsters Local No. 175 v. Clorox Co., 353 F.3d

13 1125, 1129 (9th Cir. 2004) (quoting VISA Int'l Serv. Ass'n v. Bankcard

14 Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986)).  "'The burden is

15 on the party seeking additional discovery to proffer sufficient facts

16 to show that the evidence sought exists, and that it would prevent

17 summary judgment.'" Id. at 1129-30 (quoting Chance v. Pac-Tel Teletrac

18 Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)).

19     "Where, however, a summary judgment motion is filed so early in

20 the litigation, before a party has had any realistic opportunity to

21 pursue discovery relating to its theory of the case, district courts

22 should grant any Rule 56(f) motion fairly freely." Burlington N.

23 Santa Fe R. Co. v. Assiniboine & Sioux Tribes, 323 F.3d 767, 773 (9th

24

25 [4] Rule 56(f) provides:
       Should it appear from the affidavits of a party opposing the
26     motion that the party cannot for reasons stated present by
       affidavit facts essential to justify the party's opposition, the
27     court may refuse the application for judgment or may order a
       continuance to permit affidavits to be obtained or depositions to
28     be taken or discovery to be had or may make such other order as
       is just.

Cir. 2003) (emphasis added); see also In re Deep Vein Thrombosis, 356 F. Supp. 2d 1055, 1060 (N.D. Cal. 2005). "Further, where, as in the present litigation, no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." Burlington, 323 F.3d at 774.

1. Bad Faith

Plaintiff is entitled to conduct discovery regarding Defendant's potential bad faith. It is true that Defendant's "request for permission to use the original [copyrighted work] should [not] be weighed against a finding of fair use." Campbell, 510 U.S. at 585 n.18. While this appears to be the only form of so-called bad faith alleged in Plaintiff's FAC, this does not bar Plaintiff from conducting discovery related to bad faith generally. Plaintiff is entitled to any evidence that could theoretically undermine Defendant's use of the doctrine in this case.

The parties offer very different pictures regarding bad faith's prominence in the fair use analysis. Defendant cites to a recent Second Circuit case, which held that bad faith "generally contributes little to fair use analysis" and that "a finding of bad faith is not to be weighed very heavily within the first fair use factor and cannot be made central to fair use analysis." NXIVM Corp. v. The Ross Inst., 364 F.3d 471, 479 n.2 (2d Cir. 2004). However, even the Second Circuit conceded that its interpretation was based upon an ambiguous footnote in Campbell.[5] Id.

---

[5] This footnote stated that "[e]ven if good faith were central to fair use," a request for permission to use the copyrighted work, followed by a decision to copy it regardless of the owner's refusal to license

1    The Plaintiff responds by citing the Ninth Circuit's decision in

2  Fisher, which he claims permits a showing of bad faith to bar the fair

3  use defense.  794 F.2d at 436-37; see also Norse v. Henry Holt & Co.,

4  847 F. Supp. 142, 147 (N.D. Cal. 1994) ("Bad faith can bar the fair

5  use defense.").  The problem with this viewpoint is that Fisher

6  predates Campbell and its troublesome footnote.  There is also little

7  post-Campbell case law within the Ninth Circuit that this Court can

8  utilize in informing its analysis.  One nearby district court has

9  interpreted Campbell's footnote to mean that the Supreme Court "hardly

10  endorses the good faith requirement," Religious Tech. Ctr. v. Netcom

11  On-Line Com. Servs., Inc., 923 F. Supp. 1231, 1244 (N.D. Cal. 1995),

12  but this opinion is only binding on this court to the extent that it

13  is persuasive.  On the other hand, it is worth noting that the Ninth

14  Circuit's Model Jury Instruction on fair use, written after Campbell,

15  specifically quotes Norse's language that bad faith can serve as a

16  complete bar to fair use.  See 9th Cir. Civ. Jury Instr. § 20:18

17  (2001); see also Harris v. San Jose Mercury News, Inc., 2006 WL

18  995151, at *1 n.2 (N.D. Cal. Apr. 10, 2006) (citing to the Ninth

19  Circuit's Model Jury Instruction on fair use as persuasive authority).

20    However, this Court should not be expected to rule on such an

21  unsettled legal issue unless the question is ripe.  This Court is not

22  omniscient and cannot know whether a ruling on the relationship

23  between fair use and bad faith would be proper unless appropriate

24  discovery has been conducted.

25

26  the work, does not prove bad faith.  Campbell, 510 U.S. at 585 n.18.
    It seems that the Court has simply left the issue of bad faith and
27  fair use for "another day," and it is impossible to predict how the
    issue will ultimately be resolved.  The Court's use of the term "even
28  if" can hardly be construed as an express rejection of bad faith's
    importance.

13

1          **2.**   **The Other Aspects of Fair Use**

2      Furthermore, discovery should not be limited to Defendant's

3 potential bad faith, but should also be allowed as to <u>all</u> fair use

4 factors. This is necessary in order for this Court to consider any

5 future evidence submitted by the Defendant regarding the fourth fair

6 use factor - alleged "market harm." As stated in <u>Campbell</u>, "[e]ven

7 favorable evidence [regarding the fourth factor], without more, is no

8 guarantee of fairness. . . . Market harm is a matter of degree, and

9 the importance of this factor will vary, not only with the amount of

10 harm, but also with the relative strength of the showing on the other

11 factors." 510 U.S. at 591 n.21. However, this Court cannot

12 appropriately calibrate the importance of the fourth factor in this

13 case unless the precise evidentiary contours of the entire fair use

14 analysis are also included. The fair use analysis involves a fact-

15 intensive inquiry, which cannot be simplified and must be carefully

16 conducted on a case-by-case basis. <u>See id.</u> at 577. This Court sees

17 no grounds for treating this case differently.

18      Given this framework, the Court will permit the parties to

19 conduct all appropriate discovery regarding the fair use defense. It

20 is not necessary at this early stage to delineate the precise spectrum

21 of permissible discovery, especially when none has been conducted.

22 Instead, it is prudent that "[t]he Court leave[] the determination of

23 the scope of discovery to the Magistrate Judge." <u>Newmark v. Turner</u>

24 <u>Broad. Network</u>, 226 F. Supp. 2d 1215, 1223 (C.D. Cal. 2002). The

25 magistrate judge is capable of determining the persuasiveness of the

26 parties' discovery requests.

27 ///

28 ///

## IV.   CONCLUSION

For the foregoing reasons, this Court DENIES Defendant's converted motion for summary judgment because Defendant has provided no evidence regarding the fourth fair use factor.  This Court also GRANTS Plaintiff's motion for a Rule 56(f) continuance in order to conduct all proper discovery related to the fair use defense.

By this Order, the Court sets the following dates: (1) a pretrial conference will be held on March 5, 2007, at 3:30 p.m., and (2) trial will begin on March 20, 2007, at 9:00 a.m., in Courtroom 6.  The parties may file subsequent motions, or cross-motions, for summary judgment.  However, this Court emphatically urges the parties not to file any such motions until the adequate discovery has been completed, and any disputes are resolved with the Magistrate Judge.  The Court will not look kindly upon a premature motion.


IT IS SO ORDERED.



DATED: _10/25/06_                    _____
                                        STEPHEN V. WILSON
                                     UNITED STATES DISTRICT JUDGE